UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MOHIT SHYAM,<br><br>                    Petitioner,<br><br>          v.<br><br>WARDEN, Clay County Justice Center,<br>SAMUEL OLSON, Chicago Field Office,<br>U.S. Immigration and Customs<br>Enforcement,<br>DAVID VENTRUELLA, Acting Director of<br>U.S. Immigration and Customs<br>Enforcement,<br>MARKWAYNE MULLIN, Secretary of the<br>U.S. Department of Homeland Security,<br>TODD BLANCHE, Attorney General of the<br>United States<br><br>                    Respondents. | )<br>)<br>)<br>)<br>)<br>)   No. 2:26-cv-00447-JRO-MG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability.  The main issue in this case is whether the Petitioner, Mohit Shyam, falls into the category of aliens subject to mandatory detention.  He does under 8 U.S.C. § 1225(b)(2)(A).  As such, his detention without bond pending removal proceedings does not violate the INA, its regulations governing bond determinations, the *Accardi* doctrine, the Administrative Procedure Act ("APA"), or the Fifth Amendment's Due Process

Clause. The Court therefore **DENIES** his Petition for Writ of Habeas Corpus. Dkt. 1.

## I. BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence. *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of India. Dkt. 1 at 4; Dkt. 10 at 2. On or around December 23, 2020, he entered the United States without inspection in the Rio Grande Valley, where he was arrested by U.S. Customs and Border Patrol ("CBP"). Dkt. 1 at 5; Dkt. 10 at 2; Dkt. 10-1 at 3. On January 20, 2021, the Department of Homeland Security ("DHS") initiated removal proceedings by issuing him a Notice to Appear ("NTA"). Dkt. 1-2 at 5–7; Dkt. 10 at 2; Dkt. 10-1 at 5–6. The NTA charges stated that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). Dkt. 1-2 at 5; Dkt. 10-1

at 5.  DHS granted him bond on January 21, 2021, and he was released into the United States.  Dkt. 1 at 5; Dkt. 1-2 at 4; Dkt. 10 at 2; Dkt. 10-1 at 10.

Petitioner timely applied for asylum.  Dkt. 1 at 5; Dkt. 1-2 at 8–9.  However, on September 17, 2025, his asylum application was denied and he was ordered removed by an Immigration Judge.  Dkt. 1 at 6; Dkt. 1-2 at 10–13; Dkt. 10-1 at 11–14.  Petitioner appealed the order of removal to the BIA, and that appeal remains pending.[1]  Dkt. 1 at 6; Dkt. 1-2 at 14–16; Dkt. 10-1 at 15–17.

On June 17, 2026, the Indiana State Police conducted a traffic stop of Petitioner's vehicle near Evansville, Indiana.  Dkt. 10 at 2; Dkt. 10-1 at 2.  Officers contacted U.S. Immigration and Customs Enforcement ("ICE") after learning of Petitioner's immigration status.  Dkt. 10 at 2.  ICE issued an I-200 warrant for his arrest and served it that same day.  Dkt. 10 at 2; Dkt. 10-1 at 2, 4, 19.[2]

---

[1] Respondents argue that this removal order is not final.  Dkt. 10 at 8.  They are correct. A removal order becomes administratively final thirty days after the order is issued, if no appeal is filed, or after the Board of Immigration Appeals affirms the order.  8 U.S.C. § 1231(a)(1)(B); 8 U.S.C. § 1101(a)(47)(B); *see also* 8 C.F.R. § 1003.38(b).  Once the order becomes final, Petitioner's detention will be governed by 8 U.S.C. § 1231(a)(2)(A), which states that "[d]uring the removal period, the Attorney General shall detain the alien." *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) (noting that the removal and detention period under § 1231 "begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final'").  But because Petitioner appealed, the 90-day removal period specified by 8 U.S.C. § 1231(a)(1) has not been triggered, and until then, Petitioner is still being detained under 8 U.S.C. § 1225(b)(2)(A).  This Court therefore has jurisdiction to reach the issue.

[2] Petitioner contends that he was subjected to a warrantless arrest on June 17, 2026. Dkt. 1 at 6, 24.  This is factually incorrect, dkt. 10-1 at 19, and thus cannot serve as a basis for the relief he seeks.

Petitioner was detained at the Clay County Justice Center in Brazil, Indiana, when he commenced this habeas action.  Dkt. 1 at 4; *see* dkt. 10-1 at 18.  He names as Respondents the Warden of the Clay County Justice Center, Brazil, IN; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; David Venturella, Acting Director of ICE; Samuel Olson, Director of the Chicago ICE Field Office; and Todd Blanche, Acting Attorney General of the United States.  Dkt. 1 at 4–5.

**B.      Statutory Background**

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted."  8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) requires the detention and "expedited removal" of certain applicants for admission.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020).  An applicant is subject to expedited removal if he

4

is "arriving in the United States" and determined by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry documentation.   8 U.S.C. § 1225(b)(1)(A)(i).[3]   Upon such determination, the officer "shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for asylum . . . or a fear of persecution."  *Id.* (emphasis added).   Where an alien claims asylum, the immigration officer "shall refer" the alien to an asylum officer for an interview to determine whether he has a "credible fear of persecution."  *Id.* § 1225(b)(1)(A)(ii), (B)(ii).  Aliens determined to have a credible fear of persecution "shall be detained for further consideration of the application for asylum" in a standard removal hearing.  *Id.* § 1225(b)(1)(B)(ii); *see Thuraissigiam*, 591 U.S. at 109 (citing 8 C.F.R. § 208.30(f)).  Aliens determined to lack a credible fear of persecution are subject to expedited removal and shall be detained "until removed."  *Id.* § 1225(b)(1)(B)(ii).

Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287.   With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for

---

[3] "[C]ertain other aliens" are also subject to expedited removal, including any aliens "designated by the Attorney General" who have "not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" for fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II).

admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II. DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents. Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission." Petitioner argues that Section 1226(a) and its associated regulations govern his detention and that he

6

not only has a right to a bond hearing but is entitled to immediate release.  Dkt. 1 at 15–16; *see also* dkt. 10 at 8–9.  He also brings a claim under the Fifth Amendment's Due Process Clause, the APA, and the *Accardi* doctrine, contending that his detention is unlawful based on DHS's prior decision to release him on bond pending his removal proceedings in January 2021. Ultimately, he is not entitled to the relief he seeks.[4]

## A.   Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.[5]

Section 1225(b)(2)(A)'s plain terms require Petitioner's detention pending his removal proceedings.  When construing a statutory term of the INA, the Court first considers what that term means "when used in everyday speech" and "ordinary usage."  *Mullin v. Al Otro Lado*, 609 U.S. ---, No. 25-5, 2026 WL 1825741, at *6–7 (U.S. June 25, 2026) (construing the phrase "arrives in the United States" in 8 U.S.C. § 1225(a)(1)); *accord United States v. Melvin*, 948 F.3d

---

[4] Petitioner argues that the Court should not require exhaustion of administrative remedies in this case. Dkt. 1 at 10–11.  Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 10, 11, so the Court does not address the issue.

[5] For the reasons explained below and in this Court's prior orders, *e.g.*, *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's dissenting opinion in *Castañon-Nava v. U.S. Department of Homeland Security*, 175 F.4th 828 (7th Cir. 2026). Judge Kirsch's reasoning there is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the merits in habeas actions.  *Buenrostro Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  The Court incorporates by reference its analysis of the Seventh Circuit's *Castañon-Nava* decisions in its prior orders, including its observation that neither the stay opinion nor the merits opinion in that case establishes binding Seventh Circuit precedent on the Section 1225(b)(2)(A) issue.  *E.g.*, *Sidhant v. Swearingen*, No. 2:26-cv-00281-JRO-MKK, 2026 WL 1424982, at *3–5 (S.D. Ind. May 20, 2026).

848, 851 (7th Cir. 2020) (the Court "start[s] with the text of the statute to ascertain its plain meaning" (internal quotation and citation omitted)).    In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole.  *Melvin*, 948 F.3d at 852.  Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ."  *Id.*

To start, Petitioner is an "applicant for admission."  The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1).  While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader.  "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here.  *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission.").  There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted.  He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2).

8

*Jennings*, 583 U.S. at 287.  The Court has established that Section 1225(b)(1) does not apply to Petitioner.  *See* Section I.B, *supra.*  Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country.  Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings").

Petitioner raises several arguments rejecting this straightforward application of Section 1225.  The Court does not find these arguments persuasive.

### 1.    "Seeking Admission"

First, Petitioner argues Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek lawful entry into the United States.  Dkt. 1 at 7, 15.  The Court disagrees.

This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A).  *See Demir*, 2026 WL 706485, at *4; *Singh v.*

*Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*, 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)); *cf. Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *3 (stating that Section 1225(a), which defines the term "applicant for admission," "governs the inspection of aliens who *seek admission* to the United States" (emphasis added)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking admission" in Section 1225(b)(2)(A). Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission." *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous). This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States. *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived. Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers." The provision's use of "or otherwise" indicates that "'applicants for admission' are a subset of those 'seeking admission.'" *Buenrostro-Mendez*, 166 F.4th at 503; *see Avila*, 170 F.4th at 1135 n.4. Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"— not "the arriving alien in seeking admission." In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225. It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect. For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States. Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation. *See Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking

11

admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States.  But that is a feature of Section 1225, not a bug. The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  Petitioner never effected a *lawful* entry into the country.  He was not admitted.  In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission."  This is not a novel or even recent understanding of our immigration laws.  In 2012, the Board of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . .  The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

*Matter of Lemus-Losa,* 25 I. & N. Dec. at 743.  Thus, the term "seeking admission" does not create an independent pre-requisite for mandatory detention under Section 1225(b)(2)(A).

12

### 2.    "Arriving Aliens"

Second, Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225 applies only to "arriving" aliens at the Nation's borders and ports of entry.  Dkt. 1 at 17.  He says he is not an "arriving alien," as he has lived in the interior of the country for years.  *Id.*; *accord Mohammed v. Olson,* No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *4 (S.D. Ind. Dec. 10, 2025) ("Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to 'arriving' noncitizens attempting to enter the United States.").

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words.  *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text.").  As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers.  *Demir*, 2026 WL 706485, at *5.

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*.  That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms.  *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the

13

process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)).  *Accord Buenrostro-Mendez,* 166 F.4th at 505; *Avila,* 170 F.4th at 1136–37.

Granted, it is beyond question that Section 1225 applies to "arriving aliens."  Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country—that is, all "applicants for admission"—regardless of when they arrived.  *Cf. Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *8 n.8 (construing 8 U.S.C. § 1158(a)(1), which is phrased similarly to 8 U.S.C. § 1225(a)(1), and noting that "'physically present in the United States' and 'arrives in the United States' are not coterminous").  Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

### 3.    1225 Versus 1226

Third, Petitioner argues that Section 1226, not Section 1225(b)(2)(A), applies to him because he as been living in the United States for years.  Dkt. 1 at 19.  This argument both overlooks the text of Section 1225(b)(2)(A)—stating the applicant for admission "shall be detained" for removal proceedings—and misunderstands the provision's relationship with Section 1226(a).

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes—like the INA—that are often interspersed with "specific solutions" to "specific

problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.*

Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226. Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Executive is free to exercise its discretion in how it executes the provisions of

15

Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner. It harmonizes the two provisions. *E.g.*, *Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *8 ("Some statutes, for instance, pick out a 'general' category alongside a 'specific' subcategory that 'might in other circumstances be deemed surplusage.'" (quoting *Lorenzo v. SEC*, 587 U.S. 71, 80 (2019)).

At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *8 ("We have acknowledged that Congress sometimes enacts provisions that are superfluous." (cleaned up)); *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."); *cf. Castañon-Nava*, 175 F.4th at 877 (Kirsch, J., dissenting) ("The government's interpretation of § 1225(b)(2)(A) does not make the Laken Riley Act superfluous, and any overlap is understandable given that Congress passed the Act 'at a time when the Executive

16

was still declining to exercise its full enforcement authority [under § 1225].'" (alteration in original) (quoting *Buenrostro-Mendez*, 166 F.4th at 505)).

* * *

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not.  As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity."  *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 170 F.4th at 1135–36; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully").  Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time.  And Petitioner expressly argues this point. Dkt. 1 at 7, 13, 19.  That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a).  It is also inconsistent

17

with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Thuraissigiam*, 591 U.S. at 140 ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A). As such, Respondents have not violated Section 1226(a) by detaining him without a bond hearing. As he is not eligible for a discretionary bond hearing, the Court does not address his argument that he is entitled to immediate release.

**B.    *Accardi* Doctrine and Administrative Procedure Act**

Petitioner further argues that Respondents' decisions to revoke his January 2021 bond determination without a bond redetermination hearing violate DHS custody regulations, in contravention of the *Accardi* doctrine and the APA. Dkt. 1 at 23–24 (citing 5 U.S.C. § 706(2)(A), (D)). The Court disagrees on both fronts.

Under the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954), a federal agency must follow its own regulations in exercising its authority. *See also Martinez Camargo v. I.N.S.*, 282

18

F.3d 487, 491 (7th Cir. 2002) ("[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests.").

Under the APA, a reviewing court may hold unlawful and set aside "final agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706. The scope of the Court's "abuse of discretion" review is "narrow" and limited to whether the agency "examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (cleaned up); *see also Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024) (noting the court "reviews agency determinations with great deference" and "cannot substitute its judgment for that of the agency" (citations omitted)).

### 1.    The Bond Regulations Petitioner Cites Do Not Apply

First, Petitioner argues that "Respondents were required to comply with the INA, appliable custody regulations, and the settled principle that an agency must follow its own rules and procedures," dkt. 1 at 23 (citing 8 C.F.R. §§ 236.1(c)(9) and 1236.1(c)(9)), and that failure to do so is "not in accordance with law, and without observance of procedure required by law," *id.* at 24. But

this argument simply restyles Petitioner's previous argument that Section 1226(a) applies to his detention and not Section 1225.

The regulations Petitioner cites implement and elaborate upon the procedures prescribed by Section 1226.  As their shared title suggests, the regulations at 8 C.F.R. §§ 236.1 and 1236.1 concern the same subject matter—"apprehension, custody, and detention."  These regulations include procedures for the Section 1226(a) bond determinations and appeals thereof.  For example, both regulations state:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in **section 236(c)(1) of the Act** [8 U.S.C. § 1226(c)(1)], under the conditions at **section 236(a)(2) and (3) of the Act** [8 U.S.C. § 1226(a)(2), (3)]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R. § 236.1(c)(8); *id.* § 1236.1(c)(8) (emphasis added).  They also provide:

> [T]he immigration judge is authorized to exercise the authority in **section 236 of the Act** [8 U.S.C. § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 236.1(d)(1); *id.* § 1236.1(d)(1) (emphasis added).  For its part, 8 C.F.R. § 1003.19 further specifies that "bond determinations made by the service

pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236," and establishes procedures for such review.

These regulations implement Section 236 of the INA, that is, 8 U.S.C. § 1226, and impose no broader obligation on the government than Section 1226 itself. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) ("An agency's regulation cannot operate independently of the statute that authorized it." (internal quotation marks and citation omitted)). The Court has determined that Section 1225 governs Petitioner's detention—not Section 1226 and its discretionary bond provision. The cited bond regulations therefore do not apply to Petitioner, and Respondents have not violated them or the *Accardi* doctrine by detaining him without bond pending removal proceedings.

**2.    Re-Detention Is Not Arbitrary, Capricious, or an Abuse of Discretion**

Next, Petitioner argues that there has been no "material change in circumstances [that] justifie[s] any departure from the prior Immigration Judge bond determination" in January 2021, so his re-detention now is "arbitrary, capricious, [and] an abuse of discretion." Dkt. 1 at 23–24. Again, this argument is premised on the notion that Petitioner is not subject to mandatory detention but is entitled to a Section 1226(a) bond hearing. As discussed above, Section 1226 and its accompanying regulations requiring an individualized assessment do not apply to him.

21

In any case, the agency's rationale survives APA review because the agency gave a reasoned basis for detaining Petitioner in June 2026.[6] *Dep't of Com.*, 588 U.S. at 773. Petitioner's immigration record states "CUSTODY DETERMINATION: Shyam, Mohit will be Held in ICE Custody without bond due to current ICE Policy." Dkt. 10-1 at 3. This policy was not in effect at the time of Petitioner's January 2021 release on bond. Still, as Respondents argue, "an agency can 'change its existing position as long as it provided a reasoned explanation for the change.'" Dkt. 10 at 15 (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016), and citing *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542 (2025)). As Respondents explain, ICE's current policy is consistent with the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which "explains the reasoning behind Petitioner's mandatory detention" and the agency's policy change. Dkt. 10 at 15. The policy is also consistent with the Court's analysis of the INA above. Thus, Petitioner's status in June 2026 was that of an alien not admitted or paroled into the United States. Respondents did not act arbitrarily by enforcing ICE's policy of detaining him pursuant to Section 1225(b)(2)(A).

**C.   Petitioner's current detention does not violate the Fifth Amendment.**

Finally, Petitioner argues his current detention violates the Fifth Amendment's Due Process Clause. *See* Dkt. 1 at 12. He raises arguments that

---

[6] Respondents also argue that APA review does not apply to Petitioner because his claim "sounds in habeas corpus" and he "is challenging the legality of his detention." Dkt. 10 at 14 (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025)). The Court does not decide this issue given that Respondents' actions satisfy APA review in any case.

reflect notions of substantive due process and procedural due process. The Court addresses each theory in turn.

### 1. Substantive Due Process

Petitioner argues that he "has a fundamental interest in liberty and being free from official restraint" that requires an "individualized basis for revoking the Immigration Judge's prior bond determination," including an assessment of "either danger or flight-risk at the time of re-detention." Dkt. 1 at 19–21. But Petitioner fundamentally misunderstands the nature of his liberty interest.

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As the Seventh Circuit recently said, "[a]rticulating a substantive due process right requires 'a careful description of the asserted fundamental liberty interest' claimed to be violated." *Doe v. Sloan*, 172 F.4th 955, 958 (7th Cir. 2026) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997), and *Christensen v. Cnty. of Boone*, 483 F.3d 454, 462 (7th Cir. 2007)). The "specific interest must be grounded in '[o]ur Nation's history, legal traditions, and practices.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). The Seventh Circuit cautioned that "the 'scope of substantive due process is very limited,' and that judges should be 'reluctant to expand the concept.'" *Id.* (quoting *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)).

Even assuming (without deciding) that Petitioner has correctly articulated a fundamental liberty interest, that interest is not violated here. In fact,

Petitioner is free to live at liberty without detention, just not in this country. Under similar circumstances, the Seventh Circuit has held that Petitioner's liberty interest "is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999); *cf. Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) (denying Eighth Amendment bail to alien subject to removal because he was not lawfully admitted to the United States). Accordingly, his liberty interest is constitutionally circumscribed by the procedures mandated by the INA, "[g]iven the sweeping powers Congress possesses to prescribe the treatment of aliens." *Parra*, 172 F.3d at 958 (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *accord Rodriguez*, 814 F. Supp. 3d at 963 ("Under *Parra*, because petitioner does not attempt to argue that he is 'entitled to remain in' the United States, his private interest in release pending his removal proceedings is relatively minimal."). The Seventh Circuit's narrower view of Petitioner's liberty interest as an alien who is not lawfully present was upheld by the Supreme Court in *Demore*. 538 U.S. at 516 (favorably citing *Parra*).

Accordingly, Petitioner's detention does not violate substantive due process. *E.g., Tapia v. Mullin,* --- F. Supp. 3d ---, No. 1:26-cv-01321-AD, 2026 WL 1657240, at *4 (W.D. Tex. June 8, 2026) ("[T]he right for an alien to be released into the interior of the United States during his immigration proceedings

24

is not one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." (cleaned up)).

### 2.    Procedural Due Process

Petitioner also argues that "Respondents' actions . . . violate Petitioner's right to procedural due process under the Fifth Amendment," namely by failing to give him an opportunity to prove that he is neither a flight risk nor a danger to the community.  Dkt. 1 at 21–22.  However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Demore v. Kim,* 538 U.S. 510, 531 (2003); *accord Banyee v. Garland,* 115 F.4th 928, 931 (8th Cir. 2024) (*quoting Demore*, 538 U.S. at 523). That holding settles the issue.  And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case.  *Demir,* 2026 WL 706485, at *7–8.

Petitioner argues that due process requires an "individualized bond hearing consistent with the requirements of the Due Process Clause."  Dkt. 1 at 7, 19.  But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Demore,* 538 U.S. at 528.  Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted

the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas* to support his argument, dkt. 1 at 14, 20, but that case is distinguishable. There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention. In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point." *Zadvydas*, 533 U.S. at 697. Petitioner's detention here is a detention pending removal proceedings. Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701. Petitioner has been detained by ICE pending his removal proceedings for less than two months, and an Immigration Judge has already ruled that he is subject to removal, dkt. 1 at 6; dkt. 1-2 at 10–13; dkt. 10-1 at 11–14—suggesting that his removal proceedings are moving along at a reasonable pace and his risk for indefinite detention remains low at

26

this time.  Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Mohit Shyam's Petition for Writ of Habeas Corpus, dkt. [1], and **DISMISSES** this case with prejudice.  Final judgment shall issue by separate entry.

**SO ORDERED.**

Date:  7/27/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

27